UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Niculae Paval

    v.                                                                                  Civil No. 21-cv-652-SE
                                                                                       Opinion No. 2022 DNH 070

Kilolo Kijakazi, Acting Commissioner,
Social Security Administration


O R D E R

Niculae Paval challenges the denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). An Administrative Law Judge ("ALJ") found that Paval, despite a severe impairment, retains the residual functional capacity to perform a full range of work at all exertional levels, subject to certain limitations. Accordingly, the ALJ concluded Paval is not disabled as defined by Social Security regulations. See 20 C.F.R. § 404.1505(a).

Paval moves to reverse the Acting Commissioner's decision. Doc. no. 8. He argues that the ALJ erred in finding that his post-onset treatment was "conservative" and in relying upon a medical opinion that was not based upon his entire medical record. The Acting Commissioner moves to affirm, arguing the ALJ's decision was supported by substantive evidence. Doc. no. 9. For the reasons discussed below, the court denies Paval's motion to reverse and grants the Acting Commissioner's motion to affirm.

## STANDARD OF REVIEW

For purposes of review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla," id., and exists, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis, "such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Sacilowski, 959 F.3d at 433. At the first three steps, the claimant must prove that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; and (3) the

impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

If the claimant meets his burden at the first two steps of the sequential analysis, but not at the third, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to Step Four. Id. § 404.1520(e). RFC measures the maximum amount a person can do in a work setting despite the limitations caused by his impairments. Id. § 404.1545(a)(1). At Step Four, the claimant must establish that his RFC is insufficient to perform any of his past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, in which the Social Security Administration has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment as well as the claimant's age, education, and work experience. See id. § 404.1520(a)(4)(v). If such jobs exist, the claimant is not disabled. Id. If they do not, he is disabled. Id.

## BACKGROUND

A detailed factual background can be found in the Acting Commissioner's statement of facts (doc. no. 9-2) and in the

administrative record (doc. no. 6).[1] The court provides a brief summary of the case here.

I. Factual Background

Paval was born in 1959. He has worked primarily as a truck driver, which involves driving all over the country, and loading and unloading trailers. He has a history of asthma and seasonal allergies, with particular problems in the springtime, and of being a smoker. In May 2013, Paval reported to the emergency room due to shortness of breath. Upon examination, he had decreased breath sounds and wheezes, but no rhonchi or rales. He was prescribed medication. Paval returned to the emergency room in August 2015 for shortness of breath. He indicated that he had run out of his medication (Albuteral) and that he had difficulty catching a deep breath while unloading trucks. Paval also said that he had recently completed a steroid taper and was feeling short of breath only some of the time since then. His electrocardiogram ("ECG"), chest x-ray, and examination for

---

[1] Paval did not file a statement of facts with his motion to reverse. But see LR 9.1(c) (the plaintiff's motion to reverse "shall be accompanied by a (1) statement of material facts not to exceed 15 pages; . . . ."). Because the court grants the Acting Commissioner's motion to affirm and in light of Paval's limited arguments in this action, the court waives Paval's noncompliance with the Local Rule and proceeds with the Acting Commissioner's statement of facts and the administrative record.

pulmonary effect and breath sounds were all normal. After a nebulizer treatment, Paval's symptoms improved.

From 2016 to 2019, Paval saw a primary care provider approximately once a year, typically during the spring or summer months, for flare-ups in his asthma and allergy symptoms. His providers consistently diagnosed mild to moderate persistent asthma, with or without an exacerbation depending on the visit. Although Paval repeatedly reported symptoms of shortness of breath and wheezing, his examinations generally showed no wheezes and no rhonchi or rales. His providers treated his symptoms with medication management, including inhalers and nebulizer treatments. They also consistently advised Paval to avoid exposure to extreme temperatures and airborne irritants. Paval regularly indicated that nebulizer treatments improved his symptoms. At times Paval reported not taking some of his medication regularly, and once requested an at-home nebulizer. Paval inconsistently reported the persistence of his asthma symptoms — in some visits reporting that he had no symptoms in the winter or that his symptoms were always worse in the spring, and in others reporting that he experienced symptoms year-round. He also inconsistently reported his history of smoking.

On or around February 15, 2019, Paval stopped working as a truck driver because the company "cancelled [his truck] run." Admin. Rec. at 37. He has not worked since that time.

In January 2020, Paval contacted his primary care provider's office to report that he had not been "breathing right" during most days over the past three to four months. Id. at 615. He acknowledged that he is a current smoker, and that his symptoms get worse when he exerts himself but get better when he uses his inhaler, which he reported using more frequently. When he was seen in the office a few days later, he indicated that he had run out of inhalers and nebulizer solution. Upon examination, his oxygen saturation was 100%. He had no wheezes, rales, or rhonchi. His provider refilled his asthma medications and prescribed a Prednisone taper.

II.  Procedural Background

On September 24, 2019, Paval filed an application for disability insurance benefits. Paval alleged a disability onset date of February 15, 2019, when he was 59 years old, due to knee pain, back pain, gastritis, chronic respiratory disorders, and asthma.[2]

---

[2] While Paval mentions his alleged knee and back pain in his motion, he does not challenge any of the ALJ's findings or provide any legal argument regarding his alleged left knee impairment from a slip and fall in January 2016, back pain, or gastritis. Therefore, the court does not address Paval's associated symptoms, alleged limitations, or treatments.

The Social Security Administration denied Paval's application at the initial level and again after a request for reconsideration. Paval then requested a hearing in front of an ALJ. On November 9, 2020, the ALJ held a telephonic hearing, during which Paval testified and was represented by an attorney.[3]

On November 19, 2020, the ALJ issued an unfavorable decision. She found that Paval's asthma constituted a severe impairment, 20 C.F.R. § 404.1520(c), but that Paval's other alleged limitations were nonsevere. The ALJ found that Paval had not satisfied his burden to prove that his asthma met or medically equaled the severity of one of the listed impairments in the Social Security regulations. Id. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ further found that Paval had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations":

> the claimant can frequently climb ladders, but should not climb ropes or scaffolds. He can frequently climb ramps and stairs and frequently balance, stoop, kneel, crouch, and crawl. The claimant can only work in an environment that does not include even moderate exposure to potential irritants, such as fumes, odors, dusts, gases, or poorly ventilated areas. He should have no concentrated exposure to extreme temperatures or humidity.

---

[3] Though not pertinent to Paval's arguments on appeal, an independent vocational expert also testified.

Admin. Rec. at 19. In so finding, the ALJ noted that since the alleged date of onset, Paval "required only conservative treatment provided by his primary care provider." Id. at 20. She elaborated that there is no evidence that he reported to the emergency room or urgent care due to acute asthmatic exacerbations, that he was hospitalized, or that he required specialized care from a pulmonologist "as one would expect if [his] asthma [was] not well controlled." Id. The ALJ noted that Paval experienced one exacerbation in January 2020, which required a Prednisone taper, but that he was not regularly prescribed that medication over the relevant period. The ALJ determined that the "overall conservative nature of [Paval's] treatment over the relevant period does not support greater limitations than those" she identified in her stated RFC. Id.

In determining Paval's RFC, the ALJ also considered all medical evidence and prior administrative medical findings in the record, including the opinions of two state agency consultants, James Trice, M.D. and Carole Bibeau, M.D. Dr. Trice opined that Paval had no exertional limitations but should avoid even moderate exposure to extreme temperatures, humidity, and pulmonary irritants, and concentrated exposure to wetness. Dr. Bibeau opined that Paval had no exertional limitations but is limited to frequent postural maneuvers and should avoid moderate exposure to extreme cold, humidity, fumes, odors, dusts, gases,

8

and poor ventilation. The ALJ found both doctors' opinions to be persuasive, well-supported, and consistent with the evidence in the record, "including the conservative nature of [Paval's] treatment, the overall benign objective findings, and [Paval's] own descriptions of his activities of daily living." Id. at 21. Neither Dr. Trice nor Dr. Bibeau reviewed the entire medical record. However, the ALJ found Dr. Bibeau's opinion "most persuasive" because she reviewed a greater amount of the evidence in the record when she completed her report on February 7, 2020. Id. The ALJ also found Dr. Bibeau's February 2020 opinion to be consistent with the record as a whole, including the evidence admitted after February 2020. Id.

At Step Four, the ALJ determined that Paval's RFC does not prevent him from performing past relevant work as a truck driver as generally performed in the national economy. Thus, the ALJ concluded Paval is not disabled. 20 C.F.R. § 404.1520(f).

The Appeals Council denied Paval's request for review of the ALJ's decision, making it the final decision of the Acting Commissioner for purposes of judicial review. Id. § 422.210(a); see Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

## DISCUSSION

Paval argues that the ALJ made two errors in her decision. Paval first contends that the ALJ erred in characterizing his

post-onset treatment for asthma as only conservative. Paval does not claim that the record reflects that he did in fact undergo more than mere conservative treatment, but instead asserts that the "lack of treatment" for his asthma since February 2019 is "directly attributable to [him] not engaging in substantial gainful activity since the date of onset." Doc. no. 8-1 at 3.

Paval offers no argument or evidentiary support for this assertion of direct causation, and the record does not support such a claim. Paval's asthma diagnosis significantly predates the alleged onset date of disability — February 15, 2019. Between 2013, when he was hospitalized for shortness of breath, and February 2019, Paval worked for several years as a truck driver, which included engaging in heavy exertional activities, despite his asthma. During that same period, he experienced periodic asthmatic exacerbations, particularly during the spring when his seasonal allergies flared up. These exacerbations were managed by his primary care providers with medication and nebulization. He was not treated by a pulmonologist or other specialist. He reported to the emergency room in 2013 and 2015 but has not been hospitalized for asthmatic complications since. As the ALJ stated in her decision, there is a "lack of any evidence of a significant deterioration of [Paval's] asthma as of the alleged onset date of disability." Admin. Rec. at 20. Paval testified that he stopped working in February 2019, not

because a medical condition compelled him to do so, but because his truck run was cancelled.

Similarly, between February 15, 2019, and late 2020, Paval's asthma was treated with medication and nebulization by his primary care providers. He did not require hospitalization or treatment by a pulmonologist or other specialist. He experienced one exacerbation in January 2020, reporting to his doctor that he had run out of inhalers and nebulizer solution. This exacerbation was again treated with medication. Although Paval was not working during this period, he testified that, despite his asthma, he was able to walk up and down more than 30 steps, five times a day, in order to leave (and return to) his third-floor apartment for meals and shopping.

Reviewing the evidence in the record as a whole, Paval has not demonstrated that the ALJ erred in characterizing his post-onset treatment for asthma as conservative. Cf., e.g., Crowley v. Saul, No. 19-cv-650-JL, 2020 WL 615094, at *8 (D.N.H. Feb. 10, 2020) (explaining the ALJ found that claimant "was treated conservatively with narcotic medication and injections for pain relief"); Starkweather v. Shalala, No. 94-100-B, 1995 WL 85355, at *1 (D.N.H. Feb. 21, 1995) ("The cardiologist recommended conservative treatment with medications but not surgery."). Nor has he demonstrated that the ALJ erred in failing to attribute such conservative treatment directly to his lack of employment.

11

Paval also challenges the ALJ's reliance on Dr. Bibeau's medical opinion as "most persuasive" because her opinion was not based upon the full medical record. Doc. no. 8-1 at 4 (quoting Admin. Rec. at 21). "It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." Meldrem v. Colvin, No. 16-cv-156-JL, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017) (quotations and brackets omitted). "Of course, the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Id. (quotation omitted). "An ALJ may yet rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment." Id. (quotation omitted).

Here, Paval does not argue that the ALJ erred in finding that the medical evidence postdating Dr. Bibeau's opinion was consistent with her opinion, and instead points only to the fact that Dr. Bibeau's opinion was not based upon the entire record. That fact alone is insufficient to demonstrate that the ALJ erred. See id.

12

Moreover, the ALJ acknowledged that Dr. Bibeau did not review the entire record and found that "the evidence admitted to the record following her review showed only that the claimant's medications have been referred by his primary care physician and the claimant is due for a primary care annual visit. Thus, the findings of Dr. Bibeau are consistent with the record as a whole." Admin. Rec. at 21. The record supports the ALJ's findings. The ALJ did not err in relying upon and affording great weight to Dr. Bibeau's opinion. See, e.g., Brown v. Colvin, No. 14-cv-256-JL, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015) (affirming ALJ's reliance on non-examining medical source where ALJ found postdated evidence "remain[ed] consistent with the record in its entirety").

CONCLUSION

For the foregoing reasons, Paval's motion to reverse (doc. no. 8) is denied. The Acting Commissioner's motion to affirm (doc. no. 9) is granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

June 6, 2022
cc: Counsel of Record.